Saina S. Shamilov (CSB #215636)
sshamilov@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA  94041
Telephone:  650.988.8500
Facsimile:   650.938.5200

Bryan A. Kohm (CSB #233276)
bkohm@fenwick.com
Shannon E. Turner (CSB #310121)
sturner@fenwick.com
Su Li (CSB #339374)
sli@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Jonathan T. McMichael (CSB #304737)
jmcmichael@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Telephone:  206.389.4510
Facsimile:   206.389.4511

Attorneys for Plaintiff
LASHIFY, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lashify, Inc., | Case No.:  2:22-cv-6148 |
| Plaintiff, | **COMPLAINT FOR PATENT IN-FRINGEMENT; FALSE ADVER-TISING UNDER 15 U.S.C. § 1125(a)(1)(B); FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114; FALSE DESIGNATION OF ORIGIN UN-DER 15 U.S.C. § 1125(a)(1)(A); COMMON LAW TRADEMARK INFRINGEMENT; UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, 17500** |
| v. | |
| Urban Dollz LLC d/b/a Urban Doll, | |
| Sima Mosbacher, | |
| Christopher Simonian d/b/a Doll House LLC, | |
| Defendants. | |
| | **JURY TRIAL DEMANDED** |

Plaintiff Lashify, Inc. ("Lashify") hereby files this Complaint against Urban Dollz, LLC d/b/a Urban Doll ("Urban Doll"), Sima Mosbacher ("Mosbacher"), and Christopher Simonian d/b/a Doll House, LLC ("Simonian") (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action to stop Defendants from unlawfully making, using, selling, offering for sale, marketing, and importing artificial eyelash extension systems and components that infringe Lashify's intellectual property, and from engaging in false advertising, federal and common law trademark infringement, false designation of origin, and unlawful, unfair, and fraudulent business practices.

2. Defendants brazenly copied the innovations and intellectual property of Lashify so they can profit from the tireless work and ingenuity of Ms. Sahara Lotti, Lashify's founder and the inventor of numerous patents and products. Despite Lashify's requests to cease and desist their unlawful conduct, Defendants continue their proliferation of copycat products designed to reap the benefits of Lashify's intellectual property, goodwill, know-how, and ingenuity.

3. Defendants' products infringe Lashify's patents, including U.S. Patent Nos. 11,219,260 ("the '260 patent"), 11,253,020 ("the '020 patent"), 11,330,856 ("the '856 patent"), 11,234,472 ("the '472 patent"), and 11,330,855 ("the '855 patent") (collectively, the "Patents-in-Suit"). Defendants' Accused Products include, without limitation, Defendants' do-it-yourself ("DIY") lash extension product lines that comprise lash extensions with multiple lash clusters, such as the Urban Doll premade DIY lash extensions, Level Up Full Lash Starter Kit, 2-system bond, lash bundles, and all other like Urban Doll "DIY" lash extension products, each of which Urban Doll designed to copy Lashify's revolutionary, award-winning, and patented lash extension system. Examples of the Accused Products are shown below.

FENWICK & WEST LLP
ATTORNEYS AT LAW



*See* https://www.urbandollzz.com/collections/all-products.

4.    Defendants' entire business depends on unfair business practices, including copying Lashify at every turn and, upon information and belief, building an entire distribution scheme to ensure the greatest amount of harm to Lashify and Lashify's rights.

5.    As discussed herein, in designing their business and products to copy Lashify, Defendants have engaged in false advertising, federal and common law trademark infringement, false designation of origin, and unlawful, unfair, and fraudulent business practices. Defendants claim to have released a revolutionary new system that did not exist before, including the "Lightest Lashes on the Market" and the "WORLD'S FIRST" flexible and hypoallergenic bond for applying artificial lashes. Upon information and belief, these assertions are false and misleading. Defendants

FENWICK & WEST LLP
ATTORNEYS AT LAW

have also adopted Lashify's trademarks, including its well-known BONDAGE® mark, as though it were their own.

6.     Defendants' conduct leaves Lashify no choice but to take action. Lashify files this lawsuit not only to protect its own innovations, but also to protect further innovation in the beauty industry—innovation that otherwise would fall victim to the unfair and unlawful conduct of companies like Urban Doll.

## THE PARTIES

7.     Plaintiff Lashify, Inc. is a corporation organized under the laws of Delaware, having a place of business in North Hollywood, California.

8.     Upon information and belief, Defendant Urban Dollz, LLC does business under the name Urban Doll, and is a company organized and existing under the laws of California, having a place of business a 601 W. 5th Street, Suite 1100, Los Angeles, California 90071.

9.     Upon information and belief, Defendant Sima Mosbacher is an individual residing in the State of California and within this judicial district at 849 S. Broadway, Apt. 3, Los Angeles, California 90014.  Upon information and belief, Mosbacher is also a founder and manager of Urban Doll.  Upon information and belief, Mosbacher exercises dominion and control over Urban Doll and directs the daily activities and conduct of Urban Doll.  Accordingly, Urban Doll and Mosbacher are jointly and severally liable for the acts committed by Urban Doll.

10.     Upon information and belief, Defendant Christopher Simonian d/b/a Doll House, LLC is an individual residing in the State of California and within this judicial district at 18 Leeds Lane, Aliso Viejo, California 92656.  Upon information and belief, Simonian is a member, manager, or President of Urban Doll.  Upon information and belief, Simonian exercises dominion and control over Urban Doll and directs the daily activities and conduct of Urban Doll.  Accordingly, Urban Doll and Simonian are jointly and severally liable for the acts committed by Urban Doll.  Upon information and belief, Doll House, LLC is not a valid and existing legal entity, but

FENWICK & WEST LLP
ATTORNEYS AT LAW

is instead a name under which Simonian conducts business, including the acts alleged in this Complaint.

**JURISDICTION & VENUE**

11.    This action arises under the patent laws of the United States, Title 35, United States Code; the Lanham Act, Title 15, United States Code § 1051 *et seq.*; and the laws of the State of California. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over Lashify's claims arising under the laws of the State of California, which form part of the same case or controversy, pursuant to 28 U.S.C. § 1367.

12.    This Court has personal jurisdiction over Urban Doll. Upon information and belief, Urban Doll is a company organized and existing under the laws of California, having a place of business in this judicial district. This Court also has personal jurisdiction over Urban Doll because, upon information and belief, Urban Doll has committed, aided, abetted, contributed to, and/or participated in the commission of the acts alleged in this Complaint in this judicial district, that led to foreseeable harm and injury to Lashify. Upon information and belief, Urban Doll sells and offers to sell its infringing products directly through its website (https://www.urban-dollzz.com/) to the public throughout the United States, including this judicial district, and has otherwise purposely availed itself of the privileges and benefits of the laws of the California and this judicial district.

13.    This Court has personal jurisdiction over Mosbacher. Upon information and belief, Mosbacher resides within the State of California and within this judicial district. This Court also has personal jurisdiction over Mosbacher because, upon information and belief, Mosbacher has committed, aided, abetted, contributed to, and/or participated in the commission of the acts alleged in this Complaint in this judicial district, that led to foreseeable harm and injury to Lashify.

14.    This Court has personal jurisdiction over Simonian. Upon information and belief, Simonian resides within the State of California and within this judicial

district.  This Court also has personal jurisdiction over Simonian because, upon information and belief, Simonian has committed, aided, abetted, contributed to, and/or participated in the commission of the acts alleged in this complaint in this judicial district, that led to foreseeable harm and injury to Lashify.

15.    Venue is proper in this District against Defendants pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b) because Defendants have committed the acts alleged in this Complaint in this judicial district.  Further, Urban Doll has a place of business in this District.  Mosbacher and Simonian, upon information and belief, are individuals residing within this judicial district.

## LASHIFY'S INNOVATIVE LASH EXTENSION SYSTEM

16.    Lashify is a California start-up founded by Ms. Sahara Lotti, who invented the most natural-looking false lash system in the industry.  The Lashify system is a revolutionary award-winning DIY luxury lash extension system that creates salon quality lash extensions in record time and in the comfort of one's home.  The system is easy to use, and, unlike salon extensions, is damage-free to natural lashes; it creates infinite possibilities for all eye shapes in minutes.  As a result, the Lashify system has been recognized, used, and touted by Oscar-winning celebrities, world-renowned beauticians, popular magazines, online publications, and its many users.

17.    Renée Zellweger, Reese Witherspoon, Nicole Kidman, Lupita Nyong'o, Kristen Bell, Kourtney Kardashian, Claire Danes, Melissa McCarthy, Janelle Monáe, Cynthia Nixon, Jessica Simpson, Maggie Gyllenhaal, Tracie Ellis Ross, Salma Hayek, Awkwafina, Liv Tyler, and Lena Dunham are just a few of the artists and influential figures who have used the Lashify system.  The Lashify system "walked" the red carpets at the Golden Globes, Grammys, Emmys, Met Gala, and other globally followed events.  The Lashify system has been used by influential makeup artists Ariel Tejada, Jessica Smalls, Nick Barose, Anton Khachaturian, Matthew Van Leeuwen, Kirin Bhatty, and many more.  It has been featured in publications such as InStyle, Elle, Glamour, Vogue, Allure, The Knot, Shape, and many others.  And it has

FENWICK & WEST LLP
ATTORNEYS AT LAW

received numerous industry awards, including 2022 InStyle Beauty Editors' Pick, 2021-2022 The Beauty Authority NewBeauty Award Winner, 2021 Cosmopolitan Holy Grail Beauty Award, 2019 Glamour Beauty Award Winner, The Knot Beauty Awards 2019 Winner, and 2019 Shape Editor Pick.  Thus, unsurprisingly, customers of the Lashify system call it the best invention since sliced bread, a game changer, and the lash system you didn't know you needed.

18.    To date, the Lashify system has been used by hundreds of thousands of customers.

19.    Individual lash extensions done at salons are time-consuming and attach to a single lash with glue.  Due to the ingredients of the glue and excess fiber weight, traditional lash extensions can be damaging.  They can pull on natural lash roots, causing damage and lash loss.  This time-consuming, costly process needs to be re-peated every three weeks to maintain the desired results.

20.    Other artificial lashes existed before the Lashify system, and still do. One option is strip lash extensions, which is a single band of lashes the length of a natural eye that is designed to be applied with a removable adhesive over a natural top lash line.  Strip lashes weigh heavily on the natural lashes, appear "faux," and are not comfortable to be worn for long periods of time.  Another option is single cluster lash extensions, which are solitary units of closely grouped individual lashes de-signed to be applied with a hard glue, making them similarly heavy to the eyes, dif-ficult to apply, time consuming, and damaging if worn for extended periods of time or slept with.

21.    Ms. Lotti, a frequent wearer of salon lash extensions, uninspired and frustrated by the lack of options in the lash industry and recognizing the need for innovation in the industry, set out to design a product that would meet her high stand-ards.  Ms. Lotti, herself a relentless innovator, put aside her career to fully devote herself to a new enterprise and passion.  She created a lash lab in her living room; immersed herself in extensive studies of the human eyelid, the shape of lash lines,

Fenwick & West LLP
Attorneys at Law

and various chemical compositions; and tested on her own eyelashes various proto-types and potential new product options. After working tirelessly toward her goal, she had created the Gossamer® lash: the lightest, flattest, and most natural-looking artificial lash extension that merges with natural lashes like a coat of mascara—all without the skill of a lash artist or the time-consuming and damaging process offered by the salons.

22.     Ms. Lotti's research and development efforts also resulted in her discov-ery of Lashify's unique, hypoallergenic chemical compositions that are safe even for sensitive eyes. She invented the four components of the Lashify system in Lashify's Control Kit®: (1) the Gossamer® lashes in sterile lash cartridges, (2) the Fuse Con-trol® Wand for applying the lashes, (3) the Whisper Light™ flexible bond, and (4) the Glass lash extender that seals the lashes in the event of tackiness. Ms. Lotti and Lashify also invented Lashify's innovative BONDAGE® Extra Strength Bond to provide an even longer hold while remaining flexible and nourishing the natural lashes. Each is innovative and, in combination, is a revolution that changed the lash industry.

23.     Today, as a result of Ms. Lotti's hard work and ingenuity, Lashify is recognized as a market leader in the design of revolutionary lash extension products. A testament to its innovation and the strength of its brand is Lashify's extensive worldwide intellectual property portfolio, including United States and foreign pa-tents, federally registered trademarks, and many pending patent and trademark appli-cations.

24.     The Lashify Control Kit® includes two sets of Gossamer® lashes set in Lashify's innovative cartridge, a patented wand for fusing the lashes underneath the natural lash line, a bond, a sealer, and a luxury case:



25.    Gossamer® lashes are comprised of synthetic fibers, such as polybutylene terephthalate ("PBT")—the best quality synthetic silk in the world sourced from



Korea—heated to form delicate artificial lash sections, which upon application seamlessly blend with the natural lashes.  The Gossamer® lashes are designed to fit underneath the natural lashes due to their thin band and lightweight structure, come in a variety of lengths, fluffiness, curvatures, and colors, and thus can be applied in virtually unlimited positions and arrangements.  Indeed, users devise "maps" specifying locations of different types of Gossamer® lashes along one's natural lash line to achieve looks ranging from natural to glamorous to dramatic, and even colored.  The revolutionary flat base and positioning of clusters along the base invented by Ms. Lotti also gives users the ability to stack Lashify's Gossamers® for volume, if desired.

26.    The Fuse Control® Wand is used to apply the Gossamer® lashes underneath the natural lashes.  It has a pleasing fluid design and comes in a variety of colors.  It is used to fuse the Gossamer® lashes to the natural lash line for a stable and proper placement for up to 10 days.

Fenwick & West LLP
Attorneys at Law



27.   The Whisper Light™ Dual-Sided bond is a flexible, hypoallergenic adhesive designed exclusively to hold Gossamer® lashes.  Its Biotin and Micro-flex technology create a flexible and nourishing cushion underneath the lash line, protecting the roots and ensuring damage-free wear.

28.   Similarly, Lashify's popular BONDAGE® Extra Strength Bond provides an even stronger hold for multiple-day wear, while at the same time nourishing the lashes and remaining flexible and extremely comfortable.

29.   Since at least 2019, Lashify has used the "BONDAGE®" mark in connection with its goods and services in the United States, and specifically in connection with its Extra Strength Bond.  Lashify also owns all federal rights and title to the word mark "BONDAGE®," and its corresponding United States Trademark Registration No. 6065731.  Lashify has consistently used the BONDAGE® mark in commercial and promotional materials for Extra Strength Bond and related products.

30.   Lashify has invested significant resources and developed significant goodwill and brand recognition associated with its products and, for example, its BONDAGE® mark.  For example, Lashify has collaborated with legendary burlesque dancer and businesswoman Dita Von Teese to promote the BONDAGE® product and mark, as shown in the following excerpt from Lashify's website:

Fenwick & West LLP
ATTORNEYS AT LAW



FENWICK & WEST LLP
ATTORNEYS AT LAW

https://www.lashify.com/products/bondage.  Lashify also regularly uses the BOND-AGE® mark in commerce, including on its products.  As a result of Lashify's years of widespread promotion and use, Lashify's BONDAGE® mark is strong, distinctive, and well-known as an identifier of Lashify and its products.  Indeed, both the BONDAGE® mark and Lashify's BONDAGE® Extra Strength Bond have been the subject of unsolicited media attention.

31.    Glass is a unique waterproof lash extender.  Its application is the last step in Lashify's unique system.  It finishes the Lashify look, sealing and extending the wear of the Gossamer® lashes.

32.    Ms. Lotti also invented a new method of applying the Gossamer® lashes underneath the natural upper eyelash using the Lashify system, a technique that would have caused significant discomfort, an unnatural appearance, and risk of harm to one's eyes before Ms. Lotti introduced the innovative components of the Lashify system.

33.     Lashify has spent considerable time and expense on the creation, development, promotion, and enforcement of its innovative products and its intellectual property rights.

**DEFENDANTS' COPYING OF LASHIFY'S SYSTEM, USE OF LASHIFY'S INTELLECTUAL PROPERTY, FALSE ADVERTISING, AND UNFAIR BUSINESS PRACTICES**

34.     Unsurprisingly, albeit unfortunately, Lashify's innovative system and application method attracted not just a loyal customer base, but also copycats seeking to profit from the fruits of Ms. Lotti's hard work and dedication.  Among these copycats are Defendants—Urban Doll, Mosbacher, and Simonian—who blatantly copied the revolutionary Lashify system, the application method, and Lashify's associated patent and trademark rights while proclaiming them to be their own.

35.     Defendants launched the Accused Products long after Lashify's system was offered to the public and, upon information and belief, willfully copied Lashify's technology and trademark without license, permission, or authorization to create their knock-off products.

36.     Lashify offers its system as a starter kit with a set of lashes, applicator, bond, and sealer.  Just like Lashify, Defendants designed and offer the Level Up Full Lash Starter Kit including Gossamer®-like lash extensions, an applicator, and bond.

37.     And just like Lashify, Urban Doll's Accused Products are marketed to be placed under a natural lash line using Lashify's patented methods, designed to provide the same look as Lashify Gossamer® lashes and, upon information and belief, are made of similar synthetic fibers using similar technology.

38.     Indeed, upon information and belief, the similarity of the products was Defendants' intent.  Defendants set as their goal to copy Lashify's products and design, unlawfully taking advantage of Lashify's innovation in the industry.

39.     For example, upon information and belief, each of the Defendants knew about Lashify for years and purchased Lashify's products before starting to sell their

FENWICK & WEST LLP
ATTORNEYS AT LAW

own Accused Products that are strikingly similar to Lashify's innovative and patented products.

40.    Confirming that the similarities between Defendants' new products and Lashify's earlier products are no mistake, Defendants also adopted Lashify's BONDAGE® mark, and continue to use Lashify's trademark in connection with their own copycat bond products on the Urban Doll website and on their physical products. This includes, for example, use of the BONDAGE® mark on Defendants' "Noir Bondage Lash Bonding Agent" product.  Indeed, Defendants designed their entire business and product line to mimic Lashify.  These unfair acts have created significant consumer confusion and harm to Lashify, causing consumers to wrongly associate Lashify with Defendants' lower-quality and copycat products.

41.    Defendants undertook all of their conduct—ultimately plucking the finished products from Lashify after Ms. Lotti had dedicated substantial resources and years of her life to their development—with full knowledge that they were not the rightful inventor or owner of the Accused Products.

42.    Lashify sent a letter to Urban Doll on May 17, 2022, identifying Lashify's intellectual property rights and providing several examples of the ways in which Defendants' products infringe those rights.  Lashify explained that "Lashify respects the hard work, innovations, and intellectual property of others and expects others to respect Lashify's rights."  Accordingly, Lashify requested that Defendants cease their unlawful conduct.  But Defendants did not respond.

43.    Lacking so much as an acknowledgment from Defendants, Lashify sent the letter again.  This time, Lashify hand-delivered the letter to Mosbacher on June 24, 2022, ensuring that it would arrive in the hands of an individual with the authority to address Defendants' ongoing infringement.  But Mosbacher ignored the letter, too. As did Simonian.  Defendants simply swept aside Lashify's legal rights in their gambit to sell more products and grow their copycat business.

FENWICK & WEST LLP
ATTORNEYS AT LAW

44.    Just as concerning, Defendants have not only continued their unfair acts, but also multiplied those unfair acts since receiving notice of Lashify's intellectual property.  Upon information and belief, Defendants have created, or are in the process of creating, a massive multi-level marketing (MLM) scheme to expand their sales and promotion of the infringing products.  Defendants' MLM, entitled "Doll House," prominently features Simonian as "PRESIDENT / CO-FOUNER" (sic).  *See* https://www.vimeo.com/734189645 at 0:18.  Indeed, Simonian personally advertises the MLM and the infringing products in publicly available materials online, and induces others to join in the unlawful scheme to violate Lashify's intellectual property rights.  *See* https://www.vimeo.com/734189645.

45.    Defendants' promotional materials advertise Mosbacher as a founder of Urban Doll.  *See* https://www.vimeo.com/734189645 at 4:15-5:10.  As Defendants' story goes, Mosbacher allegedly found no similar products on the market in 2019, developed her own products after conducting years of research, launched products in 2020, and generated "8-figures within a year" of selling the products.  *See* https://www.vimeo.com/734189645 at 4:15-5:10.

46.    As is common among MLM schemes, Defendants designed their MLM to ensure the greatest distribution (and infringement) of Lashify's intellectual property possible, offering "levels" and rewards as participants sell additional infringing products.  *See* https://www.vimeo.com/734189645 at 11:30.  In fact, Defendants even advertise that they have "teamed up with Range Rover" to offer a pink Range Rover or vacation incentives to participants who sell infringing products at sufficiently high volumes:



*See* https://www.vimeo.com/734189645 at 14:10-13 (Simonian stating, "Can you see yourself driving in this car?  I bet you can.").



*See* https://www.vimeo.com/734189645 at 14:58.

47.    All the while, Defendants advertise that they will provide "Company Support" for participants who agree to engage in the infringing and predatory practices asserted in this Complaint.  *See* https://www.vimeo.com/734189645 at 15:25.

48.    Defendants' incentives for others to infringe are not lost on consumers. Upon information and belief, Defendants have recruited thousands of individuals to participate in their coordinated infringement strategy with the express goal of selling products that infringe Lashify's intellectual property rights and violate the laws of the United States and the State of California.  Upon information and belief, Defendants operate groups on Facebook and other social media platforms to coordinate their unfair acts.  Indeed, Mosbacher and Simonian personally serve as administrators for one or more social media groups that, upon information and belief, have as their express purpose to promote and distribute infringing products.  And, as is the goal for many predatory MLM schemes, Defendants' business depends on large numbers of individuals promoting the infringing products across all social media platforms, offering promises of pink SUVs and compensation bonuses if they infringe at sufficiently high volumes.  Two examples of the acts induced by Defendants are shown below:



https://www.instagram.com/p/CgVboD1MjNb/.



https://www.instagram.com/p/ChSJI0_u6pg/.

49.    In this way, Defendants have created and leveraged an MLM scheme for their own gain, and to spread the infringement of Lashify's intellectual property on the greatest scale possible.

50.    Upon information and belief, Defendants also include numerous false statements on their website and in promotional materials.

51.    Defendants claim on their website that their lash bonding agent is "the WORLD'S FIRST hypoallergenic 2 week hold & lash extension glue." *See* https://www.urbandollzz.com/products/level-up-full-lash-starter-kit.

52.    A true and correct screenshot of Urban Doll's website is below:

Fenwick & West LLP
Attorneys at Law

**Noir™ Lash Bonding Agent**
*($35 separately)*

Developing the WORLD'S FIRST Hypoallergenic 2
week hold & lash extension glue took us years
but it's all worth it. We're able to formulate
a lash bonding agent that's 100% waterproof,
dries seamlessly and quickly and can hold our
segmented lashes securely for up to 2 weeks!
Unlike other actually semi-permanent

53.    Defendants also claim in their marketing that the accused eyelash exten-
sion    products    are    the    "Lightest    Lashes    on    the    Market."    *See*
https://www.vimeo.com/734189645 at 7:54:



54.    Upon information and belief, these statements are false.

55.    Defendants also include a banner on their website suggesting that various well-known publications have featured or otherwise covered their products, including the Accused Products.

*See* https://www.urbandollzz.com/.  Defendants' inclusion of the logos of these publications in the middle of the main page of the company website misleads viewers and consumers into believing the products were discussed in or are endorsed by these publications, when in fact, upon information and belief, no such endorsement exists.

56.    Unlike Defendants and the Accused Products, Lashify's patented products have received numerous accolades and positive reviews in beauty publications as a result of their high quality, comfort, and ease of use.  Indeed, Lashify's website proudly displays these endorsements on its website, including from well-known publications such as Glamour, Elle, Into the Gloss, Allure, and Byrdie.  *See* https://www.lashify.com/.  Upon information and belief, Defendants chose to include

FENWICK & WEST LLP
ATTORNEYS AT LAW

the misleading endorsements on their own website to confuse Lashify's customers into believing that the Accused Products have been featured in or covered by beauty publications, just like Lashify's patented products.

57.    Defendants' egregious acts have injured Lashify's business, and threaten to continue to irreparably injure Lashify unless enjoined by this Court.  Defendants' conduct has also violated Lashify's intellectual property rights and led to consumer confusion in the market.  Further, Defendants' infringement has harmed and will continue to harm Lashify by confusing consumers, discouraging or frustrating potential users of Lashify's goods and services, and unlawfully divert business from Lashify to Urban Doll. Defendants.  Indeed, Defendants' refusal to cease and desist from further use of Lashify's technology and innovations, despite multiple requests that they do so, reflects their lack of respect for intellectual property rights.  Lashify will not be dissuaded from innovating by entities such as Defendants, who seek to profit from the innovations and ingenuity of others.

## FIRST CAUSE OF ACTION

### (Infringement of United States Patent No. 11,219,260)

58.    Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

59.    On January 11, 2022, the '260 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify.  Lashify is the lawful owner by assignment of all right, title, and interest in the '260 patent, including the rights to exclude others and to sue and recover damages for infringement.

60.    A true and correct copy of the '260 patent is attached as **Exhibit A**.

61.    Defendants have had actual notice of the '260 patent by a cease and desist letter sent from Lashify on May 17, 2022.  Defendants have also been placed on actual notice of the '260 patent by the filing of this Complaint.  Defendants also have constructive notice of the '260 patent at least by virtue of Lashify's marking of its patented products.

62.     Defendants have infringed and continue to infringe at least claim 1 of the '260 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '260 patent.

63.     The Accused Products meet each and every limitation of at least claim 1 of the '260 patent, either literally or under the doctrine of equivalents.  For example, the Accused Products include a plurality of artificial lash extensions comprising a plurality of clusters of artificial hairs with each cluster having at least two artificial hairs.  The grouping of hairs in the extensions are the clusters.  The hairs in the clusters are artificial because they do not comprise natural human hair, but instead a synthetic material.  The lash extensions also comprise a base from which the clusters of hairs protrude.  Upon information and belief, the extensions' clusters are attached to the base by at least an application of heat.  For example, the lashes are made of synthetic material, which attaches when heated as in the Accused Products.  Within the clusters of the Accused Products, at least some of the artificial hairs are coupled to one another at a respective part of the base.  In addition, the bases of the extensions are designed to attach to the underside of the natural lashes.

64.     Defendants' acts of infringement of the '260 patent were and are undertaken without authority, permission, or license from Lashify.  Defendants' infringing activities therefore violate 35 U.S.C. § 271.

65.     Upon information and belief, Defendants acted as a joint enterprise, and the infringement, conduct, and actions by one alleged herein are directly attributable to another. Upon information and belief, each Defendant also individually committed acts of direct infringement complained of herein in their individual capacities.  Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any infringing acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the infringement complained of herein in their individual

capacities, such as direct acts of infringement committed by Urban Doll and/or Doll House.

66.     As a direct and proximate consequence of Defendants' infringement of the '260 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Defendants are enjoined from infringing the '260 patent.

67.     Defendants have had actual knowledge of the '260 patent and its infringement thereof since at least the date of Lashify's cease and desist letter.  In addition, upon information and belief, Defendants knew of Lashify's patented products and the '260 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property.  Accordingly, Defendants' infringement of the '260 patent is willful.

## SECOND CAUSE OF ACTION

### (Infringement of United States Patent No. 11,253,020)

68.     Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

69.     On February 22, 2022, the '020 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify.  Lashify is the lawful owner by assignment of all right, title, and interest in the '020 patent, including the rights to exclude others and to sue and recover damages for infringement.

70.     A true and correct copy of the '020 patent is attached as **Exhibit B**.

71.     Defendants have been placed on actual notice of the '020 patent at least by the filing of this Complaint.  Defendants also have constructive notice of the '020 patent at least by virtue of Lashify's marking of its patented products.

72.     Defendants have infringed and continue to infringe at least claim 1 of the '020 patent directly by making, using, offering to sell, and selling within the

FENWICK & WEST LLP
ATTORNEYS AT LAW

United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '020 patent.

73.    The Accused Products meet each and every limitation of at least claim 1 of the '020 patent, either literally or under the doctrine of equivalents. For example, the Accused Products include a plurality of artificial lash extensions. The lash extensions are designed to attach adjacent to one another on the underside of a natural lash. The lash extensions also comprise a plurality of clusters of artificial hairs comprising at least two artificial hairs. The grouping of hairs in the lash extensions are the clusters. The hairs in the clusters are artificial because they do not comprise natural human hair, but instead a synthetic material. The lash extensions also comprise a base from which at least two hairs of each cluster protrude. Upon information and belief, the artificial hairs are connected to one another at the base by at least an application of heat. For example, the lashes are made of synthetic material, which attaches when heated as in the Accused Products.

74.    Defendants' acts of infringement of the '020 patent were and are undertaken without authority, permission, or license from Lashify. Defendants' infringing activities therefore violate 35 U.S.C. § 271.

75.    Upon information and belief, Defendants acted as a joint enterprise, and the infringement, conduct, and actions by one alleged herein are directly attributable to another. Upon information and belief, each Defendant also individually committed acts of direct infringement complained of herein in their individual capacities. Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any infringing acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the infringement complained of herein in their individual capacities, such as direct acts of infringement committed by Urban Doll and/or Doll House.

FENWICK & WEST LLP
ATTORNEYS AT LAW

76.    As a direct and proximate consequence of Defendants' infringement of the '020 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Defendants are enjoined from infringing the '020 patent.

77.    Defendants have had actual knowledge of the '020 patent and its infringement thereof since at least the filing of this Complaint.  In addition, upon information and belief, Defendants knew of Lashify's patented products and the '020 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property.  Accordingly, Defendants' infringement of the '020 patent is willful.

### THIRD CAUSE OF ACTION

### (Infringement of United States Patent No. 11,330,856)

78.    Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

79.    On May 17, 2022, the '856 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify.  Lashify is the lawful owner by assignment of all right, title, and interest in the '856 patent, including the rights to exclude others and to sue and recover damages for infringement.

80.    A true and correct copy of the '856 patent is attached as **Exhibit C**.

81.    Defendants have been placed on actual notice of the '856 patent at least by the filing of this Complaint.  Defendants also have constructive notice of the '856 patent at least by virtue of Lashify's marking of its patented products.

82.    Defendants have infringed and continue to infringe at least claim 1 of the '856 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products that, when used as instructed and according to their intended purpose, infringe the '856 patent.

83.    The Accused Products meet each and every limitation of at least claim 1 of the '856 patent, either literally or under the doctrine of equivalents.  For example,

FENWICK & WEST LLP
ATTORNEYS AT LAW

the Accused Products include a plurality of lash extensions comprising a plurality of adjacently aligned clusters. The clusters comprise multiple artificial hairs. The hairs in the clusters are artificial because they do not comprise natural human hair, but instead a synthetic material. The first and second cluster have an intersecting portion where at least one hair from each of the first and second clusters intersect with each other, wherein at said intersection at least one hair from one cluster crosses one hair from another cluster. Upon information and belief, the first and second clusters are connected at the intersecting portion by at least an application of heat. For example, the lashes are made of synthetic material, which attaches when heated as in the Accused Products.

84.     Defendants' acts of infringement of the '856 patent were and are undertaken without authority, permission, or license from Lashify. Defendants' infringing activities therefore violate 35 U.S.C. § 271.

85.     Upon information and belief, Defendants acted as a joint enterprise, and the infringement, conduct, and actions by one alleged herein are directly attributable to another. Upon information and belief, each Defendant also individually committed acts of direct infringement complained of herein in their individual capacities. Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any infringing acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the infringement complained of herein in their individual capacities, such as direct acts of infringement committed by Urban Doll and/or Doll House.

86.     As a direct and proximate consequence of Defendants' infringement of the '856 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Defendants are enjoined from infringing the '856 patent.

FENWICK & WEST LLP
ATTORNEYS AT LAW

87.    Defendants have had actual knowledge of the '856 patent and its infringement thereof since at least the filing of this Complaint.  In addition, upon information and belief, Defendants knew of Lashify's patented products and the '856 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property.  Accordingly, Defendants' infringement of the '856 patent is willful.

### FOURTH CAUSE OF ACTION

### (Infringement of United States Patent No. 11,234,472)

88.    Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

89.    On February 1, 2022, the '472 patent, entitled "Artificial Lash Extensions," was duly and legally issued to Lashify.  Lashify is the lawful owner by assignment of all right, title, and interest in the '472 patent, including the rights to exclude others and to sue and recover damages for infringement.

90.    A true and correct copy of the '472 patent is attached as **Exhibit D**.

91.    Defendants have been placed on actual notice of the '472 patent by a cease and desist letter sent from Lashify on May 17, 2022.  Defendants have also been placed on actual notice by the filing of this Complaint.  Defendants also have constructive notice of the '472 patent at least by virtue of Lashify's marking of its patented products.

92.    Defendants have infringed and continue to infringe at least claim 1 of the '472 patent directly by making, using, offering to sell, and selling within the United States and/or importing into the United States products made by methods that infringe the '472 patent.

93.    Upon information and belief, Defendants practice or cause to be practiced the manufacturing method claimed in the '472 patent, as the Accused Products meet each and every limitation of at least claim 1 of the '472 patent, either literally or under the doctrine of equivalents.  The Accused Products include artificial lash

extensions comprising a plurality of clusters of artificial hairs comprising multiple hairs.  The hairs in the clusters are artificial because they do not comprise natural human hair, but instead a synthetic material.  Within the lash extension, the artificial hairs in at least one cluster are in contact with each other. The lash extension also comprises a base, to which the clusters are attached by an attachment process. Upon information and belief, the attachment process at least includes applying heat to at least a portion of the plurality of the clusters to attach the clusters to the base.  For example, the lashes are made of synthetic material, which attaches when heated as in the Accused Products.  In addition, the lash extension's base is designed to attach to the underside of the natural lashes.  Upon information and belief, only by practicing the '472 patent's manufacturing method can such a product be created.

94.     Defendants' acts of infringement of the '472 patent were and are undertaken without authority, permission, or license from Lashify.  Defendants' infringing activities therefore violate 35 U.S.C. § 271.

95.     Upon information and belief, Defendants acted as a joint enterprise, and the infringement, conduct, and actions by one alleged herein are directly attributable to another. Upon information and belief, each Defendant also individually committed acts of direct infringement complained of herein in their individual capacities.  Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any infringing acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the infringement complained of herein in their individual capacities, such as direct acts of infringement committed by Urban Doll and/or Doll House.

96.     As a direct and proximate consequence of Defendants' infringement of the '472 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Defendants are enjoined from infringing the '472 patent.

FENWICK & WEST LLP
ATTORNEYS AT LAW

97.    Defendants have had actual knowledge of the '472 patent and its infringement thereof since at least the date of Lashify's cease and desist letter.  In addition, upon information and belief, Defendants knew of Lashify's patented products and methods and the '472 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property.  Accordingly, Defendants' infringement of the '472 patent is willful.

### FIFTH CAUSE OF ACTION

### (Infringement of United States Patent No. 11,330,855)

98.    Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

99.    On May 17, 2020, the '855 patent, entitled "Method of Applying Artificial Lash Extensions," was duly and legally issued to Lashify.  Lashify is the lawful owner by assignment of all right, title, and interest in the '855 patent, including the rights to exclude others and to sue and recover damages for infringement.

100.   A true and correct copy of the '855 patent is attached as **Exhibit E**.

101.   Defendants have been placed on actual notice of the '855 patent at least by the filing of this Complaint.  Defendants also have constructive notice of the '855 patent at least by virtue of Lashify's marking of its patented products.

102.   Defendants have infringed and continue to infringe at least claim 1 of the '855 patent indirectly under the doctrine of inducement and the doctrine of contributory infringement by instructing and helping retailers and/or end-users to apply the Accused Products in a manner that infringes the '855 patent.

103.   Defendants' instructions for applying the Accused Products meet each and every limitation of at least claim 1 of the '855 patent.  For example, instructional videos on Urban Doll's website explain how to apply the Accused Products, saying "grab lash segments and apply underneath your natural lashes, . . . and apply some sealant."  *See* https://www.vimeo.com/showcase/urbandollzz.  The method presented

FENWICK & WEST LLP
ATTORNEYS AT LAW

in instructional videos shows that a set of lash extension comprises multiple segments or clusters of hair, and also shows that applying the Accused Products involves "applying an adhesive to enable one or more lash extensions of the set of lash extensions to be affixed to an underside of natural eyelashes . . .; arranging the one or more lash extensions of the set of lash extensions at the underside of the natural eyelashes; and affixing the arranged lash extensions to the underside of the natural eyelashes of the user to secure the arranged lash extensions to the natural eyelashes using the adhesive." '855 patent, claim 1.







FENWICK & WEST LLP
ATTORNEYS AT LAW

https://www.urbandollzz.com/.  Upon information and belief, Mosbacher and

Simonian likewise promote Urban Doll's products and website, as well as the method described above for applying the products.

104.   Defendants' acts of infringement of the '855 patent were and are under-taken without authority, permission, or license from Lashify.  Defendants' infringing activities therefore violate 35 U.S.C. § 271.

105.   Upon information and belief, Defendants acted as a joint enterprise, and the infringement, conduct, and actions by one alleged herein are directly attributable to another. Upon information and belief, each Defendant also individually committed acts of direct infringement complained of herein in their individual capacities.  Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any infringing acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the infringement complained of herein in their individual capacities, such as direct acts of infringement committed by Urban Doll and/or Doll House.

106.   As a direct and proximate consequence of Defendants' infringement of the '855 patent, Lashify has suffered irreparable harm, and Lashify will continue to suffer irreparable harm in the future unless Defendants are enjoined from infringing the '855 patent.

107.   Defendants has had actual knowledge of the '855 patent and its infringement thereof since at least the filing of this Complaint.  In addition, upon information and belief, Defendants knew of Lashify's patented products and the '855 patent, including by analyzing Lashify's products and monitoring Lashify's patent portfolio, and did nothing to stop its blatant use and pirating of Lashify's intellectual property. Accordingly, Defendants' infringement of the '855 patent is willful.

**SIXTH CAUSE OF ACTION**
**(False Advertising Under 15 U.S.C. § 1125(a)(1)(B))**

108.   Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

109.   Defendants have committed acts of false advertising by their dissemination of false and misleading advertising claims as alleged above.

110.   For example, Defendants claim on their website that their lash bonding agent is "the WORLD'S FIRST hypoallergenic 2 week hold & lash extension glue." *See* https://www.urbandollzz.com/products/level-up-full-lash-starter-kit.

111.   Defendants' association of its copycat products with the phrase "world's first," constitutes a false or misleading representation of fact regarding the nature, characteristics, or qualities of Defendants' goods.

112.   Defendants also claim in their marketing that the accused eyelash extension products are the "Lightest Lashes on the Market." *See* https://www.vimeo.com/734189645 at 7:54.

113.   Defendants' association of their copycat products with the phrase "Lightest Lashes on the Market," constitutes a false or misleading representation of fact regarding the nature, characteristics, or qualities of Defendants' goods.

114.   Defendants also include a banner on their website suggesting that various well-known publications have featured or covered their products, including the Accused Products.  Defendants' inclusion of the logos of these publications on their website misleads viewers and consumers into believing the products were discussed in or are endorsed by these publications, when in fact, upon information and belief, no such endorsement exists.  *See* https://www.urbandollzz.com/.

115.   Defendants' use of false or misleading representations of fact in commercial advertising or promotion mispresents the nature, characteristics, or qualities of Defendants' goods.

116.   Defendants' use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target consumer audience, or actually deceives the target consumers.

117.   Defendants' false or misleading representations of fact are material because they are likely to influence the purchasing decision of the target consumers

118.   Defendants' falsely or misleadingly represented products are advertised, promoted, sold, and distributed in interstate commerce.

119.   Upon information and belief, Defendants acted as a joint enterprise, and the false or misleading representations of fact by one alleged herein are directly attributable to another. Upon information and belief, each Defendant also individually committed acts of false advertising complained of herein in their individual capacities.  Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any false advertising acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the false advertising complained of herein in their individual capacities, such as direct acts of false advertising committed by Urban Doll and/or Doll House.

120.   Lashify has been and continues to be injured by Defendants' false or misleading representations of fact through the diversion of sales or loss of goodwill.

121.   Upon information and belief, Defendants know that their representations of fact are false or misleading.

122.   Upon information and belief, Defendants' false or misleading representations of fact were done with bad faith and malice or reckless indifference to Lashify's and consumers' interests.

123.   Defendants' bad faith false or misleading representations of fact regarding its products makes this an exceptional case within the meaning of 15 U.S.C. § 1117.

124.   Defendants continue to make false or misleading representations of fact regarding the nature and characteristics of their products and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.

125.   Lashify is entitled to an award of Defendants' profits due to sales of the falsely or misleadingly represented products, any damages sustained by Lashify, and the costs of the action, pursuant to 15 U.S.C. § 1117.

## SEVENTH CAUSE OF ACTION

### (Federal Trademark Infringement Under 15 U.S.C. § 1114)

126.   Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

127.   Lashify owns all rights, title, and interests in and to, and holds the first, superior, and exclusive rights to use United States Trademark Registration No. 6065731 for the BONDAGE® mark.

128.   Lashify currently uses its BONDAGE® mark in commerce on its goods, including at least on adhesives for cosmetic use and adhesives for attaching artificial eyelashes, false eyelashes, and eyelash extensions.  Lashify has continuously used its BONDAGE® mark since as least as early as its date of first use, and has not abandoned the BONDAGE® mark.

129.   Both the BONDAGE® mark and United States Trademark Registration No. 6065731 are valid and subsisting.  Attached hereto as **Exhibit F** are true and correct copies of United States Trademark Registration No. 6065731 and a current Trademark Status & Document Retrieval report for United States Trademark Registration No. 6065731.

130.   Defendants use the mark BONDAGE®, and marks similar thereto, on and in connection with the offering for sale and sale of competing goods, including artificial lash extension adhesives.

131.   Lashify has not authorized Defendants to use Lashify's registered BONDAGE® mark, and Defendants' ongoing use of Lashify's BONDAGE® mark

FENWICK & WEST LLP
ATTORNEYS AT LAW

has resulted in Defendants unfairly and unlawfully benefiting from the goodwill embodied in the registered BONDAGE® mark.

132.    Defendants' unauthorized use of Lashify's BONDAGE® mark on and in connection with its products, including the "Noir Bondage Lash Bonding Agent," is likely to cause confusion, or mistake, or to deceive others into believing that Defendants' products are manufactured, sponsored, authorized, licensed, of similar quality to, or otherwise connected or affiliated with Lashify, constituting trademark infringement in violation of 15 U.S.C. § 1114.

133.    Defendants either had actual notice and knowledge, or had constructive notice by the United States Patent & Trademark Office's placement of the mark on the Principal Register and Lashify's notice of ® with the BONDAGE® mark on Lashify's website prior to Defendants' adoption and use of the mark.

134.    Defendants also adopted Lashify's registered trademark, BONDAGE®, and continue to use the trademark in connection with their own copycat bond product on its website and, upon information and belief, on product packaging.

135.    On information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of the products, to injure Lashify, and to reap the benefits of Lashify's goodwill associated with Lashify's trademark.

136.    Upon information and belief, Defendants acted as a joint enterprise, and the infringing conduct by one alleged herein is directly attributable to another.  Upon information and belief, each Defendant also individually committed acts of direct infringement complained of herein in their individual capacities.  Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any infringing acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the infringement complained of herein in their individual capacities, such as direct acts of infringement committed by Urban Doll and/or Doll House.

FENWICK & WEST LLP
ATTORNEYS AT LAW

137.   As a direct and proximate result of Defendants' wrongful conduct, Lashify has been, is now, and will be irreparably injured and damaged, and unless Defendants are enjoined by the Court, Lashify will suffer further harm to its mark, reputation, and goodwill.  This harm constitutes an injury for which Lashify has no adequate remedy at law.  Upon information and belief, Defendants have acted willfully to usurp Lashify's rights and should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) in this exceptional case.

## EIGHTH CAUSE OF ACTION

### (False Designation of Origin Under 15 U.S.C. § 1125(a)(1)(A))

138.   Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

139.   In addition to its registered BONDAGE® mark, Lashify owns and enjoys valid, enforceable, and fully subsisting common law rights in its BONDAGE® mark.

140.   Lashify's valid and protectable rights in its BONDAGE® mark predate Defendants' first use of the BONDAGE® mark.

141.   Lashify currently uses its BONDAGE® mark in commerce on its goods, including at least on adhesives for cosmetic use; adhesives for attaching artificial eyelashes, false eyelashes, and eyelash extensions.  Lashify has continuously used its BONDAGE® mark since as least as early as its date of first use, and has not abandoned the BONDAGE® mark.

142.   Upon information and belief, Defendants have used Lashify's BONDAGE® mark in commerce in the United States in connection with the sale, offering for sale, distribution, and promotion of their goods and services.  Defendants' use in commerce constitutes false designation of origin, as it is likely to cause confusion, or to cause mistake, or to deceive customers as to an affiliation, connection, or association between Defendants and Lashify, or as to the origin, sponsorship, or approval of Defendants' goods or services by Lashify and vice versa.

FENWICK & WEST LLP
ATTORNEYS AT LAW

143.   Upon information and belief, Defendants acted as a joint enterprise, and the actions by one alleged herein are directly attributable to another. Upon information and belief, each Defendant also individually committed acts of false designation complained of herein in their individual capacities.  Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any false designations complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the false designations complained of herein in their individual capacities, such as direct acts of false designation committed by Urban Doll and/or Doll House.

144.   As a direct and proximate result of Defendants' saturation of the market with its promotions, consumers are also likely to mistakenly associate Lashify's BONDAGE® mark with Defendants, the junior users of the BONDAGE® mark, instead of Lashify, the senior user of Lashify's BONDAGE® mark.  Defendants' use of Lashify's BONDAGE® mark is thus likely to cause both forward and reverse confusion and constitutes a violation of 15 U.S.C. § 1125(a).

145.   Upon information and belief, Defendants have acted willfully and should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a) in this exceptional case.

### NINTH CAUSE OF ACTION
### (Common Law Trademark Infringement)

146.   Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

147.   Lashify owns and enjoys valid, enforceable, and fully subsisting common law trademark rights in Lashify's BONDAGE® mark in California and throughout the United States.

148.   Lashify currently uses its BONDAGE® mark in California on its goods, including at least on adhesives for cosmetic use and adhesives for attaching artificial eyelashes, false eyelashes, and eyelash extensions.  Lashify has continuously used its

FENWICK & WEST LLP
ATTORNEYS AT LAW

BONDAGE® mark since as least as early as its date of first use and has not abandoned the BONDAGE® mark.

149.    Defendants, through the conduct and violations described above, are engaging in trademark infringement and unfair competition against Lashify under California common law.

150.    Upon information and belief, Defendants acted as a joint enterprise, and the infringement by one alleged herein is directly attributable to another.  Upon information and belief, each Defendant also individually committed acts of direct infringement complained of herein in their individual capacities.  Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any infringing acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the infringement complained of herein in their individual capacities, such as direct acts of infringement committed by Urban Doll and/or Doll House.

151.    Defendants have unlawfully profited from their trademark infringement as alleged herein.  As a direct and proximate result of Defendants' wrongful conduct, Lashify has and will be irreparably injured and damaged, and unless Defendants are enjoined by the Court, Lashify will suffer further harm to its mark, reputation, and goodwill.  This harm constitutes an injury for which Lashify has no adequate remedy at law.

152.    Upon information and belief, Defendants have acted willfully.

## TENTH CAUSE OF ACTION

### (Unlawful, Unfair, And Fraudulent Business Practices Under California Business & Professions Code § 17200)

153.    Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

Fenwick & West LLP
Attorneys at Law

FENWICK & WEST LLP
ATTORNEYS AT LAW

154.   Defendants' conduct, described above, constitutes unlawful, unfair, or fraudulent business acts or practices and as such constitutes unfair competition under California Business & Professions Code §§ 17200 *et seq.*

155.   For example, Defendants' conduct constitutes unlawful and unfair business acts or practices in that Defendants have engaged in unfair competition through using a false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

156.   Lashify's continuous use of its BONDAGE® mark since at least 2019 in connection with its artificial eyelash and adhesive products in the United States has created significant value in that mark.  Upon information and belief, Lashify's investment in Lashify's BONDAGE® mark has been damaged as a result of Defendants' use of the BONDAGE® mark because Lashify's BONDAGE® mark no longer serves to uniquely identify Lashify as the source of goods and services offered in connection with Lashify's BONDAGE® mark.

157.   Defendants' use of Lashify's BONDAGE® mark will permit Defendants to capitalize on Lashify's success, goodwill, and reputation in promoting its goods and services.  Further, Defendants' infringing use of the BONDAGE® mark has harmed and is likely to continue to harm Lashify by diverting business from Lashify to Defendants and by discouraging or frustrating potential users of Lashify's goods and services from being able to consume those goods and services.  This harm includes, but is not limited to, loss of customers, sales, revenues, market share, and brand equity.  Defendants' conduct has also deprived Lashify of value that rightfully belongs to it through loss of goodwill and undermining the value of Lashify's BONDAGE® mark and its ability to uniquely identify Lashify's goods and services.

158.   Upon information and belief, Defendants acted as a joint enterprise, and the actions by one alleged herein are directly attributable to another. Upon information and belief, each Defendant also individually committed acts of false designation complained of herein in their individual capacities.  Alternatively, to the extent

individuals Mosbacher and/or Simonian did not directly commit any false designations complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the false designations complained of herein in their individual capacities, such as direct acts of false designation committed by Urban Doll and/or Doll House.

159.   Defendants have unlawfully profited from their unfair acts as alleged herein.  As a direct and proximate result of Defendants' wrongful and unfair conduct, Lashify has been, is now, and will be irreparably injured and damaged, and unless Defendants are enjoined by the Court, Lashify will suffer further harm to its mark, reputation, and goodwill.  This harm constitutes an injury for which Lashify has no adequate remedy at law.

160.   On information and belief, Defendant has acted willfully.

### ELEVENTH CAUSE OF ACTION
### (Deceptive, False, And Misleading Advertising
### Under California Business & Professions Code § 17500)

161.   Lashify incorporates herein by reference its allegations contained in the preceding paragraphs.

162.   Defendants' conduct, described above, constitutes unlawful, unfair, or fraudulent business acts or practices and as such constitutes false advertising under California Business & Professions Code §§ 17500 *et seq.*

163.   Lashify has valid and protectable rights in the BONDAGE® mark that predate Defendants' first use of the BONDAGE® mark.

164.   Lashify has not authorized Defendants to use Lashify's BONDAGE® mark in connection with the promotion of Defendants' goods and services.

165.   Defendants' unauthorized use of the BONDAGE® mark is likely to cause consumers to believe that there is a relationship between Defendants and Lashify and/or that Defendants' goods and services are associated with or come from

FENWICK & WEST LLP
ATTORNEYS AT LAW

Lashify, and/or vice versa, when they do not, and such association constitutes false advertising under California Business & Professions Code §§ 17500 *et seq.*

166.   Lashify's continuous use of its BONDAGE® mark since at least 2019 in connection with its artificial eyelash and adhesive products in the United States has created significant value in that mark.  Upon information and belief, Lashify's investment in Lashify's BONDAGE® mark has been damaged as a result of Defendants' use of the BONDAGE® mark because Lashify's BONDAGE® mark no longer serves to uniquely identify Lashify as the source of goods and services offered in connection with Lashify's BONDAGE® mark.

167.   Defendants' use of Lashify's BONDAGE® mark will permit Defendants to capitalize on Lashify's success, goodwill, and reputation in promoting its goods and services.  Further, Defendants' infringing use of the BONDAGE® mark has harmed and is likely to continue to harm Lashify by diverting business from Lashify to Defendants and by discouraging or frustrating potential users of Lashify's goods and services from being able to consume those goods and services. This harm includes, but is not limited to, loss of customers, sales, revenues, market share, and brand equity.  Defendants' conduct has also deprived Lashify of value that rightfully belongs to it through loss of goodwill and undermining the value of Lashify's BONDAGE® mark and its ability to uniquely identify Lashify's goods and services.

168.   In addition, Defendants claim on their website that their lash bonding agent is "the WORLD'S FIRST hypoallergenic 2 week hold & lash extension glue." *See* https://www.urbandollzz.com/products/level-up-full-lash-starter-kit.

169.   Defendants' association of its copycat products with the phrase "world's first," constitutes a false or misleading representation of fact regarding the nature, characteristics, or qualities of Defendants' goods.

170.   Defendants also claim in their marketing that the accused eyelash extension products are the "Lightest Lashes on the Market." *See* https://www.vimeo.com/734189645 at 7:54.

FENWICK & WEST LLP
ATTORNEYS AT LAW

171.   Defendants' association of their copycat products with the phrase "Lightest Lashes on the Market," constitutes a false or misleading representation of fact regarding the nature, characteristics, or qualities of Defendants' goods.

172.   Defendants also include a banner on their website suggesting that various well-known publications have featured their products, including the Accused Products.  Defendants' inclusion of the logos of these publications on their website misleads viewers and consumers into believing the products carry an endorsement from these publications, when in fact no such endorsement exists.  *See* https://www.urbandollzz.com/.

173.   Upon information and belief, Defendants acted as a joint enterprise, and the false or misleading representations of fact by one alleged herein are directly attributable to another.  Upon information and belief, each Defendant also individually committed acts of false advertising complained of herein in their individual capacities.  Alternatively, to the extent individuals Mosbacher and/or Simonian did not directly commit any false advertising acts complained of herein in their individual capacities, upon information and belief, Mosbacher and/or Simonian nonetheless actively induced and/or contributed to the false advertising complained of herein in their individual capacities, such as direct acts of false advertising committed by Urban Doll and/or Doll House.

174.   Defendants have unlawfully profited from their unfair acts as alleged herein.  As a direct and proximate result of Defendants' wrongful and unfair conduct, Lashify has been, is now, and will be irreparably injured and damaged, and unless Defendants are enjoined by the Court, Lashify will suffer further harm to its mark, reputation, and goodwill.  This harm constitutes an injury for which Lashify has no adequate remedy at law.

175.   On information and belief, Defendants have acted willfully.

FENWICK & WEST LLP
ATTORNEYS AT LAW

**PRAYER FOR RELIEF**

WHEREFORE, Lashify prays for the following relief:

1)    A judgment that Defendants' acts constitute patent infringement, false advertising, false designation of origin, trademark infringement, and unlawful, unfair, and fraudulent business practices under the causes of action asserted in this Complaint;

2)    An order preliminarily, and a judgment permanently, enjoining and restraining Defendants, their officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with Defendants, from:

    a)    infringing any claim of the Patents-in-Suit; and

    b)    infringing Lashify's federally registered and common law trademark rights;

    c)    engaging in false advertising under 15 U.S.C. § 1125(a)(1)(B) and deceptive, false, and misleading advertising under California Business & Professions Code § 17500;

    d)    engaging in false designation of origin under 15 U.S.C. § 1125(a)(1)(A);

    e)    engaging in unlawful, unfair, and fraudulent business practices under California Business & Professions Code § 17200; and

    f)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the aforementioned activities.

3)    A judgment requiring Defendants to, at Defendants' expense, withdraw from the market, account for, and properly destroy any and all products infringing the Patents-in-Suit;

4)    A judgment that Defendants deliver up for destruction all products, labels, signs, prints, advertisements, and other articles that infringe Lashify's statutory and common law trademark rights;

FENWICK & WEST LLP
ATTORNEYS AT LAW

5)    A judgment requiring that Defendants pay Lashify all of its damages caused by Defendants' unlawful acts, including under 35 U.S.C. § 284 and damages adequate to compensate Lashify for Defendants' unfair acts, with prejudgment and post-judgment interest, as well as post-trial damages for any ongoing infringing and unfair acts;

6)    A judgment ordering that Defendants issue appropriate retractions and corrective statements;

7)    A judgment requiring that Defendants account for all profits derived from their wrongful activities and pay them to Lashify;

8)    A judgment ordering Defendants to pay exemplary and statutory damages for their intentional acts of patent infringement, false advertising, false designation of origin, trademark infringement, and unfair competition;

9)    A judgment that this case is exceptional and awarding Lashify its reasonable attorneys' fees, costs, disbursements, and interest, as provided by law, including as provided by 35 U.S.C. § 285 and 15 U.S.C. § 1117;

10)    A judgment that Defendants' infringement has been willful, and ordering Defendants to pay treble damages as provided by law;

11)    A judgment that each of Defendants are jointly and severally liable for the acts complained of herein; and

12)    Such other relief as the Court deems just and appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Lashify hereby demands a jury trial as to all issues so triable.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Dated:  August 29, 2022      FENWICK & WEST LLP

2

3                     By: */s/Bryan A. Kohm*

4                        Saina S. Shamilov (CSB #215636)

                       FENWICK & WEST LLP

5                        801 California Street

                       Mountain View, CA  94041

6                        Telephone:     650.988.8500

                       Facsimile:       650.938.5200

7                        sshamilov@fenwick.com

8                        Bryan A. Kohm (CSB #233276)

                       Shannon E. Turner (CSB #310121)

9                        * application for admission pending

                       Su Li (CSB #339374)

10                      FENWICK & WEST LLP

                       555 California Street, 12th Floor

11                      San Francisco, CA  94104

                       Telephone: 415.875.2300

12                      Facsimile:  415.281.1350

                       bkohm@fenwick.com

13                      sturner@fenwick.com

                       sli@fenwick.com

14                      Jonathan T. McMichael (CSB #304737)

                       jmcmichael@fenwick.com

15                      FENWICK & WEST LLP

                       1191 Second Avenue, 10th Floor

16                      Seattle, WA 98101

                       Telephone:     206.389.4510

17                      Facsimile:       206.389.4511

18                      Attorneys for Plaintiff Lashify, Inc.

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW